1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT
9                   FOR THE EASTERN DISTRICT OF CALIFORNIA
10
11   DARREN FIELDS,                          No.  2:24-cv-0343 WBS AC P
12                    Petitioner,
13        v.                                 FINDINGS AND RECOMMENDATIONS
14   LEANNA LUNDY, Warden,
15                    Respondent.
16
17        Petitioner is a California state prisoner proceeding on the basis of a pro se petition under

18   28 U.S.C. § 2254, which challenges his 2021 conviction for committing lewd and lascivious acts

19   upon a minor and related offenses.  ECF No. 1.  Respondent has answered.  ECF No. 12.  Counsel

20   appeared for petitioner following the issuance of previous Findings and Recommendations (ECF

21   Nos. 13,14), and those Findings and Recommendations were withdrawn to permit the filing of a

22   traverse.  ECF No. 17.  Having considered the traverse, ECF No. 19, the undersigned submits

23   these Findings and Recommendations.

24                              BACKGROUND
25   I.       Proceedings in the Trial Court
26        A.  Preliminary Proceedings
27        Petitioner was charged in Sacramento County with numerous sex offenses involving two

28   minor victims.  The case went to trial.

                                        1

1          B.  <u>The Evidence Presented at Trial</u>[1]

2          The jury heard evidence of the following facts.  Petitioner was a father figure to sisters

3    Talore and Tyler.  Petitioner was not related to the girls, but he had forged a relationship with

4    them when dating their mother.  The sisters had a fractured relationship with each of their

5    biological parents and, at various times, lived with petitioner.  When Talore was 15 years old,

6    petitioner groomed her into having a secret romantic and sexual relationship with him.  That

7    relationship continued until Talore ended it when she was 17 years old.

8          Tyler was four years younger than Talore.  Between the ages of 13 and 16, Tyler lived

9    mostly with petitioner.  When Tyler was staying at petitioner's house, he molested her on a

10   weekly basis.  Petitioner orally copulated Tyler several times and tried to penetrate her vagina

11   with his penis.  Petitioner would often force Tyler to rub his penis with her hand.

12         The sisters learned of each other's abuse and, at the urging of police officers, conducted a

13   pretext phone call with petitioner.  The phone call started between petitioner and Talore.  Talore

14   asked petitioner if he had been "doin' the same thing you did to me to her[?]," referring to her

15   sister.  Petitioner acted like he did not understand Talore's question and, when Talore explained

16   that Tyler had told her petitioner touched her inappropriately and had had sex with her, petitioner

17   denied the allegations.  Petitioner also claimed Tyler was making up allegations of sexual assault.

18   Talore then asked petitioner to explain why he had molested her.  Petitioner was shocked by

19   Talore's use of the word "molested" and said he cared about Talore and that they had been in a

20   relationship.  Petitioner told Talore multiple times that he did not touch Tyler and any allegations

21   to the contrary were not true.  Talore told petitioner Tyler said she was going to tell her social

22   worker and he needed to tell Talore the truth.  Petitioner insisted Tyler's accusations were not

23   true.

24         Tyler then got on the phone and over the course of several minutes, she accused petitioner

25   of molesting and orally copulating her.  Petitioner told Tyler he cared about her and was sorry for

26   the things he had done to her.  Petitioner did not expressly admit to molesting Tyler, but after a

27   _____

[1]  The following summary is largely adapted from the opinion of the California Court of Appeal,
28   ECF No. 1014 at pp. 1-3.

                                            2

1   while he apologized for the things he had done to her and acknowledged he had "ruined" her by

2   making her live with "this."  After Tyler demanded petitioner apologize for molesting her,

3   petitioner said, "I'm sorry for molesting you."  Over the next several minutes, Tyler asked

4   petitioner multiple times to explain his conduct.  Petitioner refused to answer the question, saying

5   there was no answer that would fix everything.  Tyler then asked petitioner what she should say

6   when she tells her social worker about the abuse.  Petitioner encouraged Tyler not to tell her

7   social worker and suggested they instead take care of it as a family.  Petitioner assured Tyler he

8   always cared about her and wanted the best for her.  He also told Tyler that telling her social

9   worker would ruin him and other people in their family.

10      Petitioner testified in his own defense, denying sexual contact with both Talore and Tyler.

11      C.  Outcome

12      Petitioner was convicted of 15 counts of lewd or lascivious acts, six counts of oral

13  copulation, and three counts of unlawful sexual intercourse.  The trial court sentenced him to 36

14  years and eight months in prison.

15      II.      Post-Conviction Proceedings

16      Petitioner timely appealed, and the California Court of Appeal affirmed the judgment of

17  conviction in August 2022.  ECF No. 10-14.  The California Supreme Court denied review on

18  November 9, 2022.  ECF No. 10-16.  Petitioner filed no applications for state collateral relief.

19      STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

20      28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of

21  1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

3

1        The statute applies whenever the state court has denied a federal claim on its merits,

2    whether or not the state court explained its reasons.  Harrington v. Richter, 562 U.S. 86, 99

3    (2011).  State court rejection of a federal claim will be presumed to have been on the merits

4    absent any indication or state-law procedural principles to the contrary.  Id. (citing Harris v. Reed,

5    489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a

6    decision appearing to rest on federal grounds was decided on another basis)).  "The presumption

7    may be overcome when there is reason to think some other explanation for the state court's

8    decision is more likely."  Id. at 99-100.

9        The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal

10    principle or principles" previously articulated by the Supreme Court.  Lockyer v. Andrade, 538

11    U.S. 63, 71-72 (2003).  Only Supreme Court precedent may constitute "clearly established

12    Federal law," but courts may look to circuit law "to ascertain whether…the particular point in

13    issue is clearly established by Supreme Court precedent."  Marshall v. Rodgers, 569 U.S. 58, 64

14    (2013).

15        A state court decision is "contrary to" clearly established federal law if the decision

16    "contradicts the governing law set forth in [the Supreme Court's] cases."  Williams v. Taylor, 529

17    U.S. 362, 405 (2000).  A state court decision "unreasonably applies" federal law "if the state

18    court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to

19    the facts of the particular state prisoner's case."  Id. at 407-08.  It is not enough that the state court

20    was incorrect in the view of the federal habeas court; the state court decision must be objectively

21    unreasonable.  Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

22        Review under § 2254(d) is limited to the record that was before the state court.  Cullen v.

23    Pinholster, 563 U.S. 170, 180-181 (2011).  The question at this stage is whether the state court

24    reasonably applied clearly established federal law to the facts before it.  Id. at 181-182.  In other

25    words, the focus of the § 2254(d) inquiry is "on what a state court knew and did."  Id. at 182.

26    Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is

27    confined to "the state court's actual reasoning" and "actual analysis."  Frantz v. Hazey, 533 F.3d

28    724, 738 (9th Cir. 2008) (en banc).  A different rule applies where the state court rejects claims

4

1  summarily, without a reasoned opinion.  In Richter, supra, the Supreme Court held that when a

2  state court denies a claim on the merits but without a reasoned opinion, the federal habeas court

3  must determine what arguments or theories may have supported the state court's decision, and

4  subject those arguments or theories to § 2254(d) scrutiny.  Richter, 562 U.S. at 102.

5                                              DISCUSSION

6      I.          Claim One: Prosecutorial Misconduct in Closing Argument

7                  A.  Petitioner's Allegations and Pertinent State Court Record

8              Petitioner alleges that his due process rights were violated by statements in the

9  prosecutor's closing argument that misled the jury as to the presumption of innocence.  ECF No.

10  1 at 7, 16-19.

11             During closing argument, the defense contended that the charges had not been proven

12  beyond a reasonable doubt.  Counsel argued:

13                      Mr. Fields, as anyone accused of any crime in this country, based on
                        our constitutional foundations, [defendant] gets the benefit of that
14                      doubt. He starts with a presumption of innocence, and he gets the
                        benefit of the doubt.
15
                        And I'm asking you all to give him the benefit of that doubt. Look at
16                      the inconsistencies in this evidence. Evaluate each and every count
                        independently. Are you convinced that those acts occurred? Is it
17                      really -- was it really the 'same ol', same ol' ' every single time?
                        Does that even make sense? Think of your own lives. Is it always the
18                      same? Don't make the mistake of assuming that everybody would
                        act the way you think they would act when you've never been in that
19                      position.

20                      And I ask you to return a verdict of not guilty after reviewing all of
                        this based on the fact that it hasn't been proven beyond a reasonable
21                      doubt.

22  6 RT 661 (ECF No. 10-8 at 72).[2]

23             In rebuttal, the prosecutor argued as follows:

24                      But don't let it be sold to you that it's okay or maybe it's easier to
                        convict on some but not others. Convict on Talore but not Tyler,
25                      because when you look at all of the evidence together -- which is how
                        you are told to evaluate this case. The reasonable doubt instruction
26                      says that you must, must compare and contrast all of the evidence

27  _____

28  [2] "RT" refers to the Reporter's Transcript on Appeal, which is lodged at ECF Nos. 10-3 through
    10-10.

                                                    5

before determining if the People have proved the case beyond a reasonable doubt.

So we don't look at one piece individually and say does that piece -- did that piece get proved beyond a reasonable doubt? No, you look at everything and the totality and say what is a reasonable interpretation of this? Here's all of the evidence taken together, compared and contrasted. Now we're gonna say is it reasonable? Does this evidence, the way that [defense counsel] told us to interpret it, is it reasonable that the Defendant is telling the truth?

And it's broken down individually by [defense counsel], probably for good reason, because the minute you look at [the evidence] in its totality, there is only one logical conclusion, one painfully obvious conclusion, and that's that the Defendant did it, but when you start separating it and saying, 'Look at this and see if this meets the burden', that's not the right way to do it. You look at everything together and decide what the truth is in this case.

And, yes, the Defendant is absolutely entitled to the trial he had. He's entitled to a trial, which he got, a fair trial, which he got, by a jury of his peers, which he got, but it doesn't mean that he's entitled to an acquittal. That is not what that means. He has had his due process. And that presumption did follow him, and does, until the minute you walk into that deliberation room, and that's when you look at the evidence, that presumption leaves, and you decide about the truth of what happened here.

And it's time now to go do that, to let you go deliberate, and I am asking you to find the Defendant guilty of all the counts.

6 RT 672-674 (ECF No. 10-8 at 83-85).

      B.   The Clearly Established Federal Law

In reviewing a prosecutorial misconduct claim, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)). "To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial." Greer v. Miller, 483 U.S. 756, 765 (1987) (quotations omitted) (citing United States v. Bagley, 473 U.S. 667, 676 (1985)). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips, 455 U.S. 209, 219 (1982). "[I]t is not enough that the prosecutor's remarks were

////

1  undesirable or even universally condemned." Darden, 477 U.S. at 181 (quotations and citation

2  omitted).

3          C.  The State Court's Ruling

4          Because defense counsel had not contemporaneously objected to the prosecutor's rebuttal

5  argument, this claim for relief was presented to the state appellate courts in conjunction with the

6  allegation that trial counsel had been ineffective in failing to object.[3]  ECF No. 10-11 (Appellant's

7  Opening Brief) at 2; ECF No. 10-15 (Petition for Review) at 2.  Because the California Supreme

8  Court denied discretionary review, the opinion of the California Court of Appeal constitutes the

9  last reasoned decision on the merits and is the subject of habeas review in this court.  See Ylst v.

10 Nunnemaker, 501 U.S. 797 (1991); Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012).

11         The Court of Appeal noted the People's assertion that the claim had been forfeited, and

12 then turned directly to the merits of the embedded ineffective assistance of counsel claim.  ECF

13 No. 10-14 at 5-6.  After summarizing the standards applicable under Strickland v. Washington,

14 466 U.S. 668 (1984), the court ruled in pertinent part as follows:

> Because defendant's claim arises in the context of a prosecutorial
> error claim, it is instructive to know the standard applicable to that
> claim of error. "A prosecutor's conduct violates the Fourteenth
> Amendment to the federal Constitution when it infects the trial with
> such unfairness as to make the conviction a denial of due process.
> Conduct by a prosecutor that does not render a criminal trial
> fundamentally unfair is prosecutorial [error] under state law only if
> it involves the use of deceptive or reprehensible methods to attempt
> to persuade either the trial court or the jury. Furthermore, . . . when
> the claim focuses upon comments made by the prosecutor before the
> jury, the question is whether there is a reasonable likelihood that the
> jury construed or applied any of the complained of remarks in an
> objectionable fashion." (People v. Morales (2001) 25 Cal.4th 34, 44.)
>
> The People acknowledge defendant was entitled to the presumption
> of innocence during jury deliberations. (Citing People v. Arlington
> (1900) 131 Cal. 231, 235 [the "presumption of innocence continues
> not only during the taking of the testimony, but during the
> deliberations of the jury, and until [it] reach[es] a verdict"].) The
> People, however, argue the prosecutor's statements are reasonably
> interpreted to mean the evidence showed the prosecution overcame
> the presumption, not that the presumption did not apply once the jury
> entered the deliberation room. We disagree. The prosecutor's

---

[3]  Ineffective assistance of counsel can excuse a procedural default.  See Murray v. Carrier, 477 U.S. 478, 488 (1986).

7

statements clearly told the jury the presumption of innocence "leaves" once the jury enters the deliberation room and weighs the evidence. When the statements are viewed in light of the prosecutor's rebuttal argument as a whole and the instructions given, however, it is not reasonably probable the jury applied the statements in a reprehensible manner or relieved the prosecution of its burden.

Indeed, the prosecutor's comments were in response to defense counsel urging the jury to isolate items of evidence to find reasonable doubt, instead of looking at the entirety of the evidence presented. The prosecutor urged the jury to look to all the evidence and determine the truth. The prosecutor was entitled to make this argument. (CALCRIM No. 220 ["In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial"].)

Further, the jury was instructed on the presumption of innocence and the burden the prosecutor had to prove before it could find defendant guilty. (CALCRIM No. 220.) The jury was also instructed that, if the prosecutor's statements of the law conflicted with the instructions, it was required to follow the instructions. (CALCRIM No. 200.) Given the whole of the prosecutor's argument and the instructions, it is not reasonably probable a more favorable outcome would have resulted had defense counsel objected to the prosecutor's statements and had the court delivered a curative admonition. Accordingly, defendant's claim of ineffective assistance of counsel lacks merit.

ECF No. 1-14 at 7-9.

       D. Procedural Default

Respondent contends that petitioner's stand-alone prosecutorial misconduct claim is procedurally barred by the state court's ruling that it had been forfeited by failure to object. ECF No. 12 at 8. When a state court rejects a claim for failure to comply with a state procedural rule, the claim may be defaulted in federal court. See Coleman v. Thompson, 501 U.S. 722, 750 (1991). A federal court may consider an otherwise barred claim if the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law. Id. at 749-50. Ineffective assistance of counsel can, if independently pleaded and proved, establish cause for a default. Murray v. Carrier, 477 U.S. 478, 488 (1986); Edwards v. Carpenter, 529 U.S. 446, 451 (2000). To avoid complicated issues of cause and prejudice, a federal habeas court may bypass a procedural default to reach the merits of a non-meritorious claim. See Lambrix v. Singletary, 520 U.S. 518, 525 (1997); Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002).

////

The procedural bar doctrine may not apply here. "'[T]he state court must actually have relied on the procedural bar as an independent basis for its disposition of the case'" in order to preclude federal review. Harris v. Reed, 489 U.S. 255, 261-62 (1989) (alteration in original) (quoting Caldwell v. Mississippi, 472 U.S. 320, 327 (1985). Here, there was no express reliance on the state law procedural bar of forfeiture. The Court of Appeal noted the existence of the issue but made no ruling that the prosecutorial misconduct claim was in fact forfeited. ECF No. 10-14 at 4-5. On the other hand, the court's consideration of the merits of the ineffective assistance of counsel issue, id., suggests an implicit finding that the claim was forfeited absent a showing of ineffective assistance. In any event, to the extent that a procedural bar would apply, the undersigned elects to bypass it because the claim may be readily denied on the merits. See Franklin, 290 F.3d at 1232.

### E.   Objective Reasonableness Under § 2254(d)

The California Court of Appeal accurately identified an incorrect statement by the prosecutor—that the presumption of innocence disappears the minute the jury walks into the deliberation room—but found that when the erroneous statement is viewed in light of the record as a whole, it is not reasonably probable that the jury applied the statement in an improper manner or relieved the prosecution of its burden. This finding supported the court's conclusion that petitioner had not established prejudice under Strickland, and it also amounts to a conclusion that the trial was not rendered fundamentally unfair for due process purposes. See ECF No. 10-14 at 7-8 (discussing standards for prosecutorial misconduct). That conclusion involves no objectively unreasonable application of federal law and follows from no unreasonable finding of underlying facts.

As the state court noted, petitioner's jury was correctly instructed on the presumption of innocence, the burden of proof, and the reasonable doubt standard. The jury was also specifically instructed that if the prosecutor's statements of the law conflicted with the court's instructions, it was required to follow the instructions. The jury is presumed to have followed all of those instructions. See Weeks v. Angelone, 528 U.S. 225, 234 (2000). Petitioner has identified no facts or circumstances which would overcome that presumption here. The court's independent

9

1  review of the record reveals none.  Accordingly, assuming that the state appellate court's

2  rejection of the <u>Strickland</u> claim on prejudice grounds also constitutes denial of the predicate

3  prosecutorial misconduct theory, there was no unreasonable application of federal law.

4      The traverse argues that the California Court of Appeal unreasonably applied <u>Strickland</u>'s

5  prejudice prong.  ECF No. 19 at 7-10.  The court is unpersuaded.  Petitioner contends generally

6  that the error undermines confidence in the outcome, <u>id.</u> at 9, but he does not identify anything

7  that was objectively unreasonable about the state court's analysis of prejudice.  As required by

8  clearly established federal law, the court assessed counsel's failure to object in light of the record

9  as a whole, <u>see Strickland</u>, 466 U.S. at 695, including all the evidence and the jury instructions.

10  Tellingly, the traverse cites no authorities finding an unreasonable application of <u>Strickland</u> on

11  comparable facts.  The undersigned is unaware of any such authority.  In any event, the

12  undersigned has found it appropriate to bypass considerations of procedural default and reach the

13  merits of the prosecutorial misconduct claim.  The California court's application of <u>Strickland</u> is

14  relevant only in the default context.  This court's decision to bypass renders that issue moot, so

15  petitioner's reliance on a <u>Strickland</u> prejudice argument misses the mark.

16      This court finds that, to the extent the state court resolved the prosecutorial misconduct

17  claim on the same grounds it denied the ineffective assistance claim, that decision was not

18  objectively unreasonable within the meaning of § 2254(d).  It was reasonable, given the record as

19  a whole, for the court to conclude that "it is not reasonably probable the jury applied the

20  statements in a reprehensible manner or relieved the prosecution of its burden."  ECF No. 10-14

21  at 8.  This conclusion fully supports a holding that the high bar of fundamental unfairness is not

22  met.  There is no inconsistency with clearly established federal law, let alone objectively

23  unreasonable application of such law.

24      Alternatively, if the California Court of Appeal's opinion is construed as not having

25  reached the merits of the prosecutorial misconduct claim, this court reviews the claim de novo

26  under pre-AEDPA standards.  <u>See Cone v. Bell</u>, 556 U.S. 449, 472 (2009).  Even without

27  reference to § 2254(d)'s limitations on relief, petitioner cannot prevail.  The prosecutor's

28  incorrect statement about evaporation of the presumption of innocence is certainly to be

1   condemned.  But is well established that even arguments deserving of universal condemnation do

2   not for that reason rise to the level of a due process violation.  <u>Darden</u>, 477 U.S. at 181.  Due

3   process is violated only if consideration of the statements in the context of the trial as a whole—

4   including all the evidence and all the jury instructions—shows the entire proceeding to have been

5   rendered fundamentally unfair.  Here the jury was correctly instructed as to the presumption of

6   innocence and the burden of proof, and was told to disregard anything the lawyers said that was

7   inconsistent with the judge's instructions.  Even under de novo review petitioner's due process

8   claim therefore fails.  The prosecutor's single misstatement of law in closing argument—even

9   about a matter as important as the presumption of innocence—does not render an otherwise fair

10  trial constitutionally infirm.  Relief is unavailable on this claim.

11      II.      <u>Claim Two: Improper Jury Instruction</u>

12              A.  <u>Petitioner's Allegations and Pertinent State Court Record</u>

13          Petitioner alleges that his due process rights were violated when the trial court instructed

14  the jury that false statements made by petitioner prior to trial could be used as evidence of his

15  consciousness of guilt.  ECF No. 1 at 7, 20-22.

16          The trial court instructed the jury pursuant to CALCRIM No. 362, as follows:

17              If the Defendant made a false or a misleading statement before this
                trial relating to the charged crime, knowing the statement was false
18              or intending to mislead, that conduct may show he was aware of his
                guilt of the crime, and you may consider it in determining his guilt.
19
                If you conclude that the Defendant made the statement, it is up to you
20              to decide its meaning and importance.  However, evidence that the
                Defendant made such a statement cannot prove guilt by itself.
21

22  2 CT 311 (ECF No. 2 at 11).[4]

23          During closing argument, the prosecution argued that petitioner's statements to Talore

24  denying he had sexually abused Tyler demonstrated his consciousness of guilt because he later

25  admitted the sexual abuse to Tyler.  6 RT 633-635 (ECF No. 10-8 at 44-46).

26  ////

27  _____

28  [4]  "CT" refers to the Clerk's Transcript on Appeal, which is lodged at ECF Nos. 10-1 & 10-2.

1        B.    The Clearly Established Federal Law

2            Erroneous jury instructions do not support federal habeas relief unless the infirm

3    instruction so infected the entire trial that the resulting conviction violates due process.  Estelle v.

4    McGuire, 502 U.S. 62, 72 (1991).  It must be established not merely that the instruction is

5    undesirable, erroneous, or even universally condemned, but that it violated some constitutional

6    right.  Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).  The challenged instruction may not

7    be judged in artificial isolation, but must be considered in the context of the instructions as a

8    whole and the trial record overall.  Estelle, 502 U.S. at 72.  Moreover, relief is only available if

9    there is a reasonable likelihood that the jury has applied the challenged instruction in a way that

10    violates the Constitution.  Id. at 72-73.

11        C.    The State Court's Ruling

12            Because this claim was exhausted on appeal, the ruling of the California Court of Appeal

13    is the subject of habeas review in this court.  See Ortiz, 704 F.3d at 1034.  The appellate court

14    ruled as follows:

15            Defendant argues CALCRIM No. 362 was given in error because the
16            false statement relied on by the prosecution was a denial of guilt and
             not the denial of a collateral matter such as the giving of a false alibi.
17            Relying on *People v. Williams* (2000) 79 Cal.App.4th 1157,
             defendant argues "[a]llowing a mere denial [of the charges] to be
18            used as evidence of consciousness of guilt would instead permit the
             illogical and circular argument that the defendant knows he is guilty
19            because he claimed he wasn't."

20            Defendant's reliance on *Williams* is misplaced. The *Williams* court
             did not hold that a mere denial of guilt was insufficient to justify an
21            instruction under CALCRIM No. 362. Indeed, the *Williams* court
             noted the defendant in that case failed to cite to authority for that
22            proposition. (*People v. Williams, supra*, 79 Cal.App.4th at p. 1166,
             fn. 8.) Indeed, our Supreme Court has rejected that argument.
23            (*People v. Bacon* (2010) 50 Cal.4th 1082, 1108.)

24            In fact, an instruction pursuant to CALCRIM No. 362 is appropriate
             where there is some evidence, if believed by the jury, the defendant
25            knowingly made a false or misleading statement regarding the
             charged crime that may show he or she was aware of his or her guilt
26            for the crime. (*People v. Rankin* (1992) 9 Cal.App.4th 430, 435-436
             [discussing CALJIC No. 2.03, the predecessor to CALCRIM No.
27            362].) "[T]here need only be some evidence in the record that, if
             believed by the jury, would sufficiently support the suggested
28            inference" of consciousness of guilt. (*People v. Coffman and Marlow*
             (2004) 34 Cal.4th 1, 102-103 [discussing consciousness of guilt

12

1   instructions CALJIC Nos. 2.04 and 2.06]; *see People v. Bowman*
2   (2011) 202 Cal.App.4th 353, 366 ["[a] trial court properly gives
    consciousness of guilt instructions where there is some evidence in
3   the record that, if believed by the jury, would sufficiently support the
    inference suggested in the instructions"].) The falsity of defendant's
4   statements may be shown by prosecution evidence, including
    defendant's pretrial statements. (*People v. Kimble* (1988) 44 Cal.3d
    480, 496-499; *People v. Edwards* (1992) 8 Cal.App.4th 1092, 1103.)
5
6   The evidence of defendant's false or misleading statements goes
    beyond his mere denials of the charged crimes involving T.
7   Defendant admitted to molesting T. during the pretext phone call.
    This admission, if believed, proved defendant's denials to Ta. that he
8   molested T. were lies, his assertions that T. was lying were lies, his
    unspecified apologies to T. for causing her hurt were misleading, and
9   his refusals to call his conduct toward T. molestation were false. An
    inference from defendant's false and misleading statements is that he
10  knew by acknowledging the truth of T.'s allegations and his conduct
    he would be admitting to the commission of a crime. Given that
11  defendant later admitted during the pretext phone call to molesting
    T., his false and misleading statements demonstrated a consciousness
12  of guilt that supported the giving of CALCRIM No. 362.

13  ECF No. 10-14 at 4-5.

14          D.  Objective Reasonableness Under § 2254(d)

15          The state court's conclusion that the evidence supported the giving of CALCRIM No. 362

16  was based on California law, and therefore provides no basis for federal habeas relief.  See

17  Menendez v. Terhune, 422 F.3d 1012, 1029 (9th Cir. 2005) (any error in state court's

18  determination of whether state law allowed for instruction in case cannot form basis for federal

19  habeas relief).  Because the state courts implicitly rejected the federal due process dimension of

20  the claim without further analysis, the undersigned asks whether there is any reasonable basis for

21  the denial under clearly established federal law.  See Richter, 562 U.S. at 102.

22          CALCRIM No. 362 is best understood as a permissive inference instruction.  That is, it

23  "suggests to the jury a possible conclusion to be drawn if the State proves certain facts, but does

24  not require the jury to draw that conclusion."  Francis v. Franklin, 471 U.S. 307, 314 (1985).  The

25  challenged instruction permits, but does not require, the jury to draw an inference of

26  consciousness of guilt *if* it first finds that the defendant made a knowingly false statement.

27  CALCRIM No. 362, supra.  This instruction takes no factual determinations away from the jury,

28  does not compel any inferences, and therefore does not shift the burden of proof or relieve the

1  prosecution of its burden of persuasion.  See Francis, 471 U.S. at 314 (permissive inference

2  instruction "still requires the State to convince the jury that the suggested conclusion should be

3  inferred based on the predicate facts proved.").  Such instructions are therefore constitutionally

4  permissible.  Id.[5]  The Ninth Circuit has squarely held that so long as a consciousness of guilt

5  instruction "merely states that the jury may consider [a defendant's false or misleading statement]

6  as indicating a consciousness of guilt, the instruction [does] not violate constitutional rights."

7  Turner v. Marshall, 63 F.3d 807, 820 (9th Cir. 1995), overruled on other grounds by, Tolbert v.

8  Page, 182 F.3d 677 (9th Cir. 1999) (en banc); see also United States v. Perkins, 937 F.2d 1397,

9  1401-02 & n.2 (9th Cir. 1991) (upholding a similar instruction).  Accordingly, there is no basis

10  for finding CALCRIM No. 362 constitutionally infirm on its face.  The clearly established federal

11  law is quite to the contrary.

12       Moreover, the trial record as a whole does not support a conclusion that the challenged

13  instruction would likely have been applied by the jury in an unconstitutional manner, or that the

14  fundamental fairness of petitioner's trial was undermined.  The instruction did not prevent the

15  jury from crediting petitioner's testimony, finding that his denials in the recorded phone call had

16  been truthful, and concluding that the incriminating portions of the conversation had merely been

17  intended to pacify Tyler.  The case did not rest on a supposed admission.  For all these reasons,

18  there is nothing objectively unreasonable about the state courts' summary rejection of petitioner's

19  due process challenge to CALCRIM No. 362.  Moreover, in the absence of any U.S. Supreme

20  Court authority holding that a consciousness of guilt instruction violates due process, § 2254(d)

21  bars relief even if the appellate opinion is construed as not reaching the due process issue.  See

22  Wright v. Van Patten, 552 U.S. 120, 125-26 (2008) (per curiam) (if no Supreme Court precedent

23  controls a legal issue raised by a habeas petitioner in state court, § 2254(d) bars relief).

24  ////

25  ////

26

27  [5]  A permissive inference may violate due process "only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury."  Francis, 471 U.S. at 314 (citing County Court of Ulster County v. Allen, 442 U.S. 140, 157-63 (1979)).  No

28  such showing has been made in this case.

14

1    III.    Claim Three: Cumulative Error

2           A.    Petitioner's Allegations and Pertinent State Court Record

3        Petitioner alleges that his due process rights were violated by the cumulative prejudice of

4    the previously identified errors.  ECF No. 1 at 7, 22-23.

5           B.    The Clearly Established Federal Law

6        Multiple errors that are harmless individually may be so prejudicial that they rise to the

7    level of a due process violation.  See Chambers v. Mississippi, 410 U.S. 284, 290 n. 3 (1973).

8           C.    The State Court's Ruling

9        The state appellate court ruled as follows:

10              Defendant contends cumulative error resulted from the combined
               effect of the individual errors alleged in his opening brief.
11              "Cumulative error is present when the combined effect of the trial
               court's errors is prejudicial or harmful to the defendant." (People v.
12              Capers (2019) 7 Cal.5th 989, 1017.) "The 'litmus test' for
               cumulative error 'is whether defendant received due process and a
13              fair trial.' " (People v. Cuccia (2002) 97 Cal.App.4th 785, 795.)
               Because we rejected defendant's individual claims of error, we
14              conclude there was no cumulative error.

15    ECF No. 1014 at 9.

16           D.    Objective Unreasonableness Under § 2254(d)

17        It was not objectively unreasonable of the state appellate court to reject petitioner's

18    cumulative error theory.  The only arguable error was the prosecutor's statement about the

19    presumption of innocence not applying in the jury deliberation room, but that error was

20    reasonably found to be harmless for the reasons already explained.  There were no other errors, so

21    there is nothing to cumulate and no possibility of a different outcome when the allegations of

22    error are considered jointly.  See Hayes v. Ayers, 632 F.3d 500, 523-24 (9th Cir. 2011) (because

23    "no error of constitutional magnitude occurred, no cumulative prejudice is possible").

24                                CONCLUSION

25        For all the reasons explained above, the state courts' denial of petitioner's claims was not

26    objectively unreasonable within the meaning of 28 U.S.C. § 2254(d).  Even without reference to

27    AEDPA standards, petitioner has not established any violation of his constitutional rights.

28    ////

                                    15

1    Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be

2    denied.

3        These findings and recommendations are submitted to the United States District Judge

4    assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l).  Within twenty-one days

5    after being served with these findings and recommendations, any party may file written

6    objections with the court and serve a copy on all parties.  Such a document should be captioned

7    "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

8    he shall also address whether a certificate of appealability should issue and, if so, why and as to

9    which issues.  See 28 U.S.C. § 2253(c)(2).  Any reply to the objections shall be served and filed

10   within fourteen days after service of the objections.  The parties are advised that failure to file

11   objections within the specified time may waive the right to appeal the District Court's order.

12   Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

13   DATED: March 5, 2025

14

15   ALLISON CLAIRE
     UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28